**UNITED STATES**

v.

**Todd R. FORBES, Quartermaster
First Class (E–6), U.S. Navy.**

**NMCCA 9901454.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 23 Aug. 1998.

Decided 11 May 2004.

John B. Wells, Civilian Appellate Defense Counsel.

Lt Rebecca Snyder, JAGC, USNR, Appellate Defense Counsel.

Maj Patricio A. Tafoya, USMC, Appellate Government Counsel.

Lt Christopher J. Hajec, JAGC, USNR, Appellate Government Counsel.

PRICE, Senior Judge, delivered the opinion of the Court in which CARVER, Senior Judge, SUSZAN, Judge, and HARRIS, Judge, concur. RITTER, Senior Judge, filed an opinion concurring in part and dissenting in part, with DORMAN, Chief Judge, joining. VILLEMEZ, Judge, filed an opinion concurring in part and dissenting in part. RED-CLIFF, Judge, did not participate in the decision of this case.

PRICE, Senior Judge:

Contrary to his pleas, the appellant was convicted of violation of a general order (three specifications), violation of a lawful order, rape, consensual sodomy, adultery (two specifications), indecent assault (two specifications), indecent language (three specifications), obstruction of justice (three specifications) and giving alcohol to a minor (two specifications), in violation of Articles 92, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, 925, and 934.

A general court-martial consisting of officer members sentenced the appellant to confinement for 15 years, reduction to pay grade E–1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence as adjudged. However, as an act of clemency, he also deferred both adjudged and automatic forfeitures until the date of his action, then suspended all adjudged forfeitures and waived all automatic forfeitures for six months. The waived forfeitures were ordered paid to the appellant's wife.

The appellant originally filed 21 assignments of error, including factual and legal insufficiency of evidence as to most of the specifications. We subsequently chose to hear oral argument on only one of the assignments of error:

THE MILITARY JUDGE ERRED IN INSTRUCTING THE MEMBERS RE-GARDING THE ACCUSED'S SILENCE OVER HIS OBJECTION.

Following oral argument before a panel of judges, the court decided, *sua sponte*, to hear this case *en banc*. We notified the parties of this decision and permitted supplemental pleadings to be filed, if desired.

In partial response, the appellant requested oral argument before the court *en banc* on the same instructional issue previously heard, as well as three other assignments of error. The government filed a responsive pleading. The court granted the motion for oral argument *en banc*, but again only as to the instructional issue.

Having carefully considered the assignments of error, the *Amicus* Brief, the Government's responses, and the oral arguments, we conclude that the evidence is legally and factually sufficient for all findings of guilty, and that the military judge's instruction error deprived the appellant of military due process which amounted to prejudicial error. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). Thus, we must set aside the findings and sentence and return the record to the Judge Advocate General for remand to the convening authority, who may order a rehearing.

## I. Background

The appellant was a married Navy recruiter serving in rural Kentucky. The charges stem from his relationships with four high school-age girls who had expressed interest in enlisting in the Navy. After his alleged misconduct was reported to Naval authorities, the appellant was charged with trying to cover it up by telling some of the victims not to say anything to investigators.

At trial, each of the four female complainants testified on the merits. In addition, the Government offered substantial corroborating evidence in support of the charges and specifications. The appellant mounted a vigorous defense, but he did not testify on the merits.

## II. Factual and Legal Sufficiency of the Evidence

This court's standard of review for sufficiency of the evidence is set forth in Article 66(c), UCMJ:

In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

Further, this standard and its application have been recognized and defined by the Court of Appeals for the Armed Forces:

[U]nder Article 66(c) of the Uniform Code, 10 U.S.C. § 866(c), the Court of [Criminal Appeals] has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency. The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of [Criminal Appeals] are themselves convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A.1987).

We conclude that a reasonable factfinder could properly have found, beyond a reasonable doubt, that the appellant committed each of the offenses of which he stands convicted. Moreover, after careful consideration, we are convinced beyond a reasonable doubt that the appellant committed each of those same offenses.

### III. Instruction on Appellant's Failure to Testify

#### A. Background

The appellant contends that the military judge erred in instructing the members concerning the fact that the appellant did not testify on the merits. We agree. Moreover, because of the great risk of prejudice to the appellant, we conclude that the military judge's error requires reversal.

To set the scene for our discussion of the legal issue, we will quote liberally from the record. At the conclusion of evidence on the merits, the military judge held Article 39a, UCMJ, sessions to discuss findings instructions. After discussing various proposed instructions, including the possibility of exceptions and substitutions, the military judge raised the issue at hand:

MJ: I don't think really that exceptions and substitutions are really raised in anything else except the sodomy, except out— if they did find [sic] guilty of the LIO of consensual, you can except out the language that had to do with forcibleness. So, they need to have that possibility, as well in the findings worksheet. The instruction on the accused's silence.

ADC: Sir, we would waive that reading, sir.

MJ: You don't want to have that instruction?

ADC: No, sir.

MJ: Do you object to that instruction?

ADC: Yes, sir, we do. I don't even—has that been even commented on, sir. Well, the fact that he didn't testify, we would rather not draw attention to that.

MJ: It says, "The accused has an absolute right to remain silent. You are not to draw any inference adverse to the accused"—

ADC: Yes, sir. We want to waive—object to that, sir.

MJ: You object to it? Well, I will have to consider that. That is a standard instruction. Normally it is given and its intent—my intent is to protect the accused from any adverse feelings by the members. I know it calls attention to it, and that is probably your objection to it. I understand. Do you want to be heard further?

ADC: No, sir.

MJ: Let me think about that one.

Record at 1664–66. Soon after that colloquy, the court recessed for about one hour. When the court reconvened in an Article 39a, UCMJ, session, the following discussion ensued:

> MJ: The court will come to order. The record shall reflect all parties who were present when the court recessed are again present. The members are absent. The record shall reflect that the proposed findings instructions have been marked as Appellate Exhibit CXXIII. Copies have been provided to both sides. There were two issues outstanding, one was whether I would give the instruction on the accused's silence. I feel that that is necessary to give unless the defense has case law to cite for the proposition that I·shouldn't give it even though the defense objects.
>
> ADC: You feel it's necessary?
>
> MJ: I do feel it's necessary.
>
> ADC: We would object to giving them that instruction.
>
> MJ: Do you have any case law to support the proposition it's not to be given over defense objection?
>
> ADC: No, sir. Other courts have argued in the military—have objected—
>
> MJ: No case law?
>
> ADC: No, sir.
>
> MJ: I just think it's important to tell the members that so they don't go back and ask the question about why the accused didn't testify. That's my thought—and also instruct them that they are not to hold that against the accused in any way.
>
> ADC: Yes, sir.

Record at 1676–77. In a later Article 39a, UCMJ, session, the military judge addressed the issue of placement and timing of the instruction:

> MJ: The court will come to order. The record shall reflect all parties who were present when the court recessed are again present. The members are absent. The record shall reflect I made some minor pen and ink changes or corrections, not changes, corrections to the findings in-structions. The record shall reflect that during the recess, defense counsel requested that the last instruction given to the members not be on the accused's silence, that I read that instruction, my verbal reading of the instruction before findings by exceptions and I intend to do that.

Record at 1686. Unfortunately, the military judge's intention was not fulfilled. Before any arguments on findings were heard, the military judge gave the members substantive instructions on the elements of the charged offenses, defenses, the burden and standard of proof, evidentiary instructions, and exceptions in the findings. Contrary to his earlier assurance to the defense team, the military judge then gave the accused's silence instruction last:

> MJ: The accused has an absolute right to remain silent. You will not draw any inference adverse to the accused by the fact that he did not testify as a witness. The fact that the accused has not testified must be disregarded by you.
>
> Trial counsel, do you desire to begin argument now, or do you want a recess?

Record at 1730. The court then recessed for one minute. After the recess, this was the first thing the military judge said:

> MJ: *Counsel, I apologize. It was an oversight on my part.* Are there any objections to the instructions that are already in the record, the instructions given, or requests for additional instructions or corrections of any kind?
>
> ADC: No additional objections, sir.

Record at 1731 (emphasis added). Although the military judge did not explain the reason for his apology, based on our review of the record and the oral arguments, we find that the military judge apologized for giving that instruction last, after assuring counsel that he would not do so.

After findings were announced, and during the preliminary Article 39a, UCMJ, session to discuss sentencing issues, the defense moved for a mistrial based on (1) the admission of uncharged misconduct,[1] (2) the mili-

---

1. Earlier in the trial, during the testimony of Chief Petty Officer Brumback, the defense made a motion for mistrial, complaining of uncharged misconduct during the Chief's testimony. After extensive argument, the military judge denied the motion but allowed an 18–hour recess to give the

tary judge's refusal to allow the defense to offer a physician's testimony relative to a defense of factual impossibility, (3) the failure of the Government to produce a defense witness on the merits, (4) the military judge's refusal to allow the members to view the vehicles where the rape, sodomy and adultery allegedly occurred, and (5) the military judge's instruction on the appellant's failure to testify, particularly the placement and timing of that instruction. In pertinent response, the military judge said:

> There was error, my error, that I had agreed to give the accused's silence instruction other than the last instruction in my substantive instructions. However, I don't think that that was an error of such a grave nature to warrant the extraordinary remedy of mistrial.

Record at 1864. The military judge then denied the motion for a mistrial.

### B. Applicable Law

We now turn to the relevant rules of law. RULE FOR COURTS-MARTIAL 920, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) addresses instructions on findings, generally. R.C.M. 920(e), *Required instructions*, does not address the issue of an accused who does not testify. But, the following Discussion offers this guidance: "Other matters which may be the subject of instruction in appropriate cases included: ... that no adverse inferences may be drawn from an accused's failure to testify [*see* MIL. R. EVID. 301(g), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.)]."

Mil. R. Evid. 301(g) reads as follows:

*Instructions.* When the accused does not testify at trial, defense counsel may request that the members of the court be instructed to disregard that fact and not to draw any adverse inference from it. Defense counsel may request that the members not be so instructed. *Defense coun-*

*sel's election shall be binding upon the military judge except that the military judge may give the instruction when the instruction is necessary in the interests of justice.*

(Emphasis added).[2] While the plain language of Mil. R. Evid. 301(g) is quite clear, we think the Analysis dispels any doubt about the meaning and application of the Rule:

> *Instructions.* Rule 301(g) has no counterpart in the 1969 Manual. It is designed to address the potential for prejudice that may occur when an accused exercises his or her right to remain silent. Traditionally, the court members have been instructed to disregard the accused's silence and not to draw any adverse inference from it. However, counsel for the accused may determine that this very instruction may emphasize the accused's silence, creating a prejudicial effect. Although the Supreme Court has held that it is not unconstitutional for a judge to instruct a jury over the objection of the accused to disregard the accused's silence, it has also stated: "It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection." *Lakeside v. Oregon,* 435 U.S. 333, 340–41, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). *Rule 301(g) recognizes that the decision to ask for a cautionary instruction is one of great tactical importance for the defense and generally leaves that decision solely within the hands of the defense.* Although the military judge may give the instruction when it is necessary in the interests of justice, *the intent of the Committee is to leave the decision in the hands of the defense in all but the most unusual cases.*

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), App. 22, at A22–6–7 (emphasis added).

---

defense an opportunity to prepare to counter the unexpected testimony. Record at 1011–48.

**2.** As seen in the extracts from the record quoted earlier, none of the parties to this court-martial explicitly referred to this Rule in their discussion of the issue at trial. We note, with displeasure, that neither side cited the rule in their original

briefs before this court, despite the reference to it in R.C.M. 920. Finally, we also note that the critical language in the Rule is repeated almost verbatim in the Military Judges' Benchbook. Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9 at 829 (30 Sep 1996).

## C. Standard of Review

█ The standard of review for most trial rulings on instructional issues is abuse of discretion, particularly when an instruction is requested by the defense. *United States v. Damatta–Olivera,* 37 M.J. 474, 478 (C.M.A. 1993). However, for mandatory instructions, and for decisions as to whether lesser included offenses are raised by the evidence, the standard of review is *de novo. United States v. Smith,* 50 M.J. 451, 455 (C.A.A.F.1999). So far as we can tell, no precedent addresses the standard of review for a military judge's decision to give a failure-to-testify instruction over defense objection, a decision that we believe falls somewhere between the two fields of instructional decisions described above.

Under Mil. R. Evid. 301(g), the election of the defense team is binding on the military judge except when necessary in the interests of justice. Thus, the military judge has no discretion in his ruling, unless the interests of justice override the defense election. If the case-specific interests of justice give the military judge pause, the judge would have to weigh the concerns of the defense team against those interests of justice. In essence, the judge then must perform a balancing test before he can decide whether to give the instruction.

In our determination of the appropriate standard of review, we think an analogy to established case law for evidentiary rulings involving another balancing test is helpful. In considering an issue of admissibility of evidence in sentencing, our superior court summarized the standard of review as follows:

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Sullivan,* 42 MJ 360, 363 (1995). Sentencing evidence, like all other evidence, is subject to the balancing test of Mil.R.Evid. 403, Manual, *supra. United States v. Rust,* 41 MJ 472, 478 (1995). A military judge enjoys "wide discretion" in applying Mil.R.Evid. 403. *Id.* "Ordinarily, appellate courts 'exercise great restraint' in reviewing a judge's decisions under Rule 403." *United States v. Harris,* 46 MJ 221, 225 (1997),

quoting *Government of the Virgin Islands v. Archibald,* 28 V.I. 228, 987 F.2d 180, 186 (3d Cir.1993). When a military judge conducts a proper balancing test under Mil. R.Evid. 403, the ruling will not be overturned unless there is a "clear abuse of discretion." *United States v. Ruppel,* 49 MJ 247, 250 (1998). This Court gives military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing. *See* [ ] *Archibald, supra.* Because the military judge in this case did not conduct a Rule 403 balancing, we have examined the record ourselves. *United States v. Lebovitz,* 669 F.2d 894, 901 (3d Cir.1982), cited with approval in *Archibald, supra.*

*United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F.2000). Thus, for admissibility of sentencing evidence, if the military judge conducts the balancing test, and articulates how he did so on the record, the standard of review is clear abuse of discretion. If he conducts the balancing test, but does not articulate how he did so, he is accorded less deference. If he does not conduct the balancing test, the standard of review is *de novo.*

█ Similarly, we hold that when a military judge gives a fail-to-testify instruction over defense objection, after having identified the case-specific "interests of justice" that support his decision and articulating his analysis of those interests relative to the defense election, then he should be accorded great deference under a standard of review of abuse of discretion. If he identifies the interests of justice in question but does not articulate his balancing of those interests with the defense election, he is accorded less deference. If he does not identify interests of justice at all, the standard of review is *de novo.*

Based on our review of the record, we find that the only reason the military judge gave the instruction was his fear that the members would hold the appellant's silence against him, unless specifically instructed not to do so. As the Analysis to Mil. R. Evid. 301(g) indicates, that is certainly consistent with traditional practice and general inter-

ests of justice. However, the plain language of the Rule and the Analysis reveals that the "interests of justice" require something more, for such a fear could be argued in every such case of silence of the accused.

At both oral argument sessions, we asked the Government to identify anything in the record that indicates that the military judge considered some specific "interests of justice" before making his ruling. We suggested that perhaps a member might have asked a question about the accused's failure to testify or that a member made a comment during the *voir dire* process indicating a desire to hear the accused's side of the story during the trial. *See United States v. Farrington,* 14 C.M.A. 614, 34 C.M.R. 394, 1964 WL 5034 (1964). The Government could not identify such an "interest of justice." Based on our scrutiny of the record, we cannot find anything either. Accordingly, since the military judge did not identify "interests of justice," we conclude that the appropriate standard of review for this issue is *de novo.*

### D. Discussion

■ We hold that the military judge erred in giving this instruction over defense objection. The military judge's failure to articulate any "interests of justice," other than the standard fear of member misuse of the appellant's silence, indicates that such "interests of justice" simply did not exist. The standard fear that members might hold an accused's silence against him has already been accounted for by the President and resolved by giving the election to the defense team, where we think it rightfully belongs. In the words of the Analysis to Mil. R. Evid. 301(g), we do not think that this is one of those "most unusual cases" that warranted giving the instruction over defense objection.

Having concluded that the judge committed error, we must now determine how that may have affected the deliberations and findings. Put another way, the question becomes: By what test should we determine whether material prejudice is manifest in this record of trial? Since this is an instructional issue of first impression, we tread carefully in this area in formulating the appropriate test. The appellant has argued for adoption of a test of harmless error. That argument goes something like this: Since Fifth Amendment due process is at stake, the standard should be the traditional constitutional error test of harmless error, and more specifically, harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Moore,* 1 M.J. 390 (C.M.A.1976). The Government has argued for a test that would impose the burden of proof upon the appellant. Under this test, the appellant would have to articulate those facts and circumstances demonstrating material prejudice to his right to a fair trial. Specifically, the appellant would have to somehow prove that the instruction was disregarded, misunderstood, or wrongly applied by the members in their deliberations.

We are not persuaded by either side. In our judgment, the appellant's argument fails because of the United States Supreme Court's decision in *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). In *Lakeside,* the defense objected to a fail-to-testify instruction similar to the one given in this case. The judge overruled the objection, explaining "it was necessary . . . to properly protect the defendant," an explanation akin to the one given by the military judge in this case. *Id.* at 335, 98 S.Ct. 1091. On appeal, the defendant argued that the instruction violated his privilege against self-incrimination under the Fifth Amendment and his right to counsel under the Sixth Amendment. The majority opinion rejected both arguments, holding that those constitutional provisions did not protect the defendant under these circumstances. While the defendant's general Fifth Amendment right to due process was not specifically addressed in the majority opinion, we believe that the Supreme Court surely would have invoked that bedrock principle had it felt that it conferred some constitutional protection upon Mr. Lakeside that the other constitutional provisions did not. Even the dissenting opinion chose not to articulate some basis for relief based upon general due process concerns. Therefore, we conclude that the Supreme Court implicitly rejected the appellant's due process argument in *Lakeside* by holding that no constitutional error occurred.

If no constitutional error occurs when a military judge gives the instruction over defense objection, then the harmless error test is not appropriate.

As to the Government's argument, we cannot accept the notion that the appellant should have to prove material prejudice when the President has written a defense-friendly rule such as Mil. R. Evid. 301(g). We note in passing that this rule is truly unique; there is no other comparable rule of procedure, evidence, or instruction in the Manual for Courts–Martial that gives the accused the power to control what happens in the courtroom. Considering the plain language of the Rule, coupled with the strong language in the Analysis, we conclude that it would be improper to impose any burden upon the appellant to show prejudice.

■ Instead of taking either side's approach, we choose to take the middle ground. We conclude that, when a military judge commits error by giving this instruction over defense objection in the absence of articulated case-specific interests of justice, a presumption of prejudice results. The Government then bears the burden of showing by a preponderance of the evidence why the appellant was not prejudiced by the instruction. Admittedly, this may be a difficult burden for the Government to bear. But, this court did not write the Rule, and on the issue of an appropriate test for prejudice, we feel compelled to take our cues from the President's language that so clearly favors the military accused.

We reach our conclusion partially based on the fact that the Military Rules of Evidence were enacted in 1980, just two years after the *Lakeside* decision left this legal suggestion on the table: "It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. And each state is, of course, free to forbid its trial judges from doing so as a matter of state law." *Lakeside*, 435 U.S. at 340, 98 S.Ct. 1091. By enacting Mil. R. Evid. 301(g), we conclude that the President accepted the Court's suggestion and established a clear marker for military due process in trials by court-martial. *See United States v. Jackson*, 6 M.J. 116, 117 (C.M.A.1979)(instructional error was denial of military due process); *see also United States v. Davis*, 47 M.J. 484, 486 (C.A.A.F.1998)("[W]here the President unambiguously gives an accused greater rights than those conveyed by higher sources, this Court should abide by that decision unless it clearly contradicts the express language of the Code."). While the Supreme Court has held that this is not a constitutional issue *per se*, the President nonetheless has chosen to confer a valuable due process right upon the military accused.

■ We also recognize that the Government was not aware of this new test for prejudice that we adopt in this decision. Because the Government is, therefore, somewhat handicapped in their advocacy of a case for no prejudice or minimal prejudice, we have *sua sponte* scrutinized the record to discern any evidence that the appellant was not prejudiced by the instruction.

The Government, did, in effect, address this presumption of prejudice by arguing that the evidence was so strong in support of conviction that the instruction could not have influenced the deliberations. We, however, are not persuaded by such a speculative argument. Moreover, we disagree that the Government's evidence was dispositive of the factual and legal issues of guilt. While the Government presented a strong evidentiary case, the defense called 22 witnesses, offered two stipulations of expected testimony, a stipulation of fact and several other exhibits. From this, the members could have concluded that there was reasonable doubt as to one or more of the charges and specifications that ultimately resulted in convictions.

As we analyze the record, we note the following factors in evaluating the potential for prejudice. First, the defense did not simply object in passing, it objected several times in two different Article 39(a), UCMJ, sessions. That suggests that the defense team suspected that, for strategic or tactical reasons, such an instruction could devastate their chances for fair and just deliberations. The military judge overruled the objections. Second, having lost the first battle, the defense attempted to mitigate the potential prejudice by asking the military judge to

bury the instruction among the other evidentiary instructions instead of leaving it last in the minds of the members just before the prosecutor's opening argument. The military judge failed to do so. Third, having lost that second battle, the defense team used their last available tool: a motion for mistrial. Among the bases for that motion was the military judge's ruling on the instruction. In our view, while not dispositive, these factors assist in our determination of potential prejudice.

In sum, it is manifest that, for the defense team, the instruction was a potential showstopper. Otherwise, they would not have continued to aggressively beat the drum before the military judge in their effort to protect the appellant. Based on our collective experience, it is not hard to see why the defense team was so concerned. After hearing from numerous witnesses on the merits, including comprehensive testimony from the complainants, court members might well expect a 37–year–old senior petty officer, with his liberty, military career, and potential retirement pension at stake, to testify in his own behalf. For a panel of members, that could easily be taken the wrong way. As the U.S. Supreme Court observed in *Lakeside:*

> It has often been noted that such inferences may be inevitable. Jeremy Bentham wrote more than 150 years ago: "(B)etween delinquency on the one hand and silence under inquiry on the other, there is a manifest connexion; a connexion too natural not to be constant and inseparable." 5 J. Bentham, Rationale of Judicial Evidence 209 (1827). And Wigmore, among many others, made the same point: "What inference does a plea of privilege support? The layman's natural first suggestion would probably be that the resort to privilege in each instance is a clear confession of crime." 8 J. Wigmore, Evidence § 2272, p. 426 (McNaughton rev.1961).

435 U.S. at 340 n. 10, 98 S.Ct. 1091.

We conclude that the presumption of prejudice has not been rebutted. Thus, by having his silence highlighted by the instruction over objection, under the facts and circumstances of this case, we hold that the appellant was deprived of military due process.

Accordingly, we must take appropriate corrective action.

## IV. Conclusion

Based on our ruling on the instructional error, the remaining assignments of error are moot. The findings and sentence are set aside. The record is returned to the Judge Advocate General. A rehearing may be ordered. If a rehearing is not ordered, the charges and specifications shall be dismissed.

Senior Judge CARVER, Judge SUSZAN, and Judge HARRIS concur.

RITTER, Senior Judge, (concurring in part, dissenting in part):

I concur with the majority's conclusions as to the factual and legal sufficiency of the evidence. I also concur that the military judge erred by instructing the members, over defense objection, against drawing any adverse inferences from the appellant's decision not to testify. However, I do not concur in the majority's application of a presumption of prejudice in this situation. Testing for prejudice under the standard for nonconstitutional error, I would find that it did not prejudice the appellant, because it did not have a substantial influence on the findings. I must therefore respectfully dissent from the decision to set aside the findings and sentence.

## Standard of Review

I agree with the majority's analysis of the proper standard of review, and that, in this instance, we must review the military judge's decision *de novo*. Although military judges have substantial discretionary power in determining which instructions to give, *United States v. McDonald,* 57 M.J. 18, 20 (C.A.A.F. 2002), Military Rule of Evidence 301(g), MANUAL FOR COURTS–MARTIAL, UNITED STATES (1998 ed.), imposes a unique limitation on the military judge's discretion when deciding whether to give the fail-to-testify instruction over defense objection. By establishing as a general rule that the defense counsel's election is binding on the military judge, Mil. R. Evid. 301(g) emphasizes the importance of the defense counsel's tactical choice over the military judge's usual wide discretion in instructing the members. This suggests that a

military judge's decision to override the defense counsel's election, based on a finding that the instruction was necessary in the interests of justice, must be carefully scrutinized.

I find the majority's reasoning persuasive that the normal deference accorded to a military judge's rulings on instructions can only be given under Mil. R. Evid. 301(g) when the military judge's rationale can be carefully scrutinized; that is, when it is clearly stated. In the absence of a clear statement of the "interests of justice" that served as the military judge's bases for overriding the defense counsel's normally "binding" election, an appellate court must view the record for itself.

### Giving the Instruction was Error

Applying a *de novo* standard of review, I conclude that the military judge erred in giving the instruction for three reasons. First, it is evident from the record of trial that the military judge did not consider Mil. R. Evid. 301(g) in deciding to give the instruction, inasmuch as the Rule was never mentioned in the course of several discussions on this issue. Second, it appears that the military judge misapplied the law by using a decision process opposite from that provided by Mil. R. Evid. 301(g).[1] That is, he apparently assumed that he had no authority to forego the instruction, even after the defense objected. Third, without applying a rule of deference to the military judge's decision, I find nothing in the bare record alone that makes clear that the interests of justice required the instruction over defense objection.

That is not to say that the military judge did not have a sound basis for concluding that the fail-to-testify instruction was necessary in the interests of justice. The military judge was able to observe and evaluate the demeanor of witnesses and members alike, and may well have concluded that the testimony provided by three victim witnesses, in separate one-on-one encounters with the appellant, so highlighted the appellant's silence

in the eyes of the members that they were certain to draw adverse inferences as a result. I view Mil. R. Evid. 301(g)'s "interests of justice" exception as allowing a military judge to override the defense election upon such a firm conviction, whether it is based on a member's question or comment, or on the presentation of evidence itself. In this case, however, it is not clear from the record alone, without an account of nonverbal factors that the judge may have considered, that the interests of justice mandated the instruction be given despite the defense counsel's normally binding election.

### Any Error Was Not Prejudicial

Having determined that the military judge erred, I conclude that the error was harmless, for reasons stated below. At most, this case presents an unintentional violation of Mil. R. Evid. 301(g) that could not have adversely affected the members' findings.

As the majority points out, the United States Supreme Court has clearly held that giving the fail-to-testify instruction over defense objection is not constitutional error. *Lakeside v. Oregon,* 435 U.S. 333, 340–42, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). Our superior court has found that for reversal, nonconstitutional error must have had a "substantial influence on the findings." *United States v. Pablo,* 53 M.J. 356, 359 (C.A.A.F. 2000); *United States v. Pollard,* 38 M.J. 41, 52 (C.M.A.1993). Rejecting these broad parameters, the majority adopts a *presumption* of prejudice for violations of Mil. R. Evid. 301(g)'s "clear marker for military due process in trials by court-martial."

However, in determining whether there has been a denial of military due process such that reversal is required, the error must be found to have materially prejudiced the substantial rights of the appellant. *See United States v. Kaiser,* 58 M.J. 146, 149 (C.A.A.F.2003)(finding instructional error does not always mandate reversal); *United States v. Matfield,* 4 M.J. 843, 845 (A.C.M.R.1978)(finding error implicating mil-

---

1. The military judge stated: "I feel that that is necessary to give *unless* the defense has case law to cite for the proposition that I shouldn't give it even though the defense objects." Record at 1676 (emphasis added). While perhaps inartful-

ly worded, this statement suggests that the military judge believed that he was legally required to give the instruction, rather than that he was required **not** to give it, absent special circumstances.

itary due process must be tested for prejudice). The result is that, for both nonconstitutional error and violations of military due process, the standard for assessing error generally requires a *showing* of prejudice. Finally, a presumption of prejudice in the situation presented would assume as a matter of law: (1) that the members did not notice that the appellant did not testify, and therefore did not draw adverse inferences on their own, and (2) that the members totally disregarded the military judge's instruction and affirmatively gave weight to what they were told not to consider at all. These are the very assumptions that the Supreme Court dismissed as "very doubtful," "dubious," and "speculative" in *Lakeside,* as discussed below. 435 U.S. at 340, 98 S.Ct. 1091.

I would find that the military judge's instruction did not have a substantial influence on the findings, due to a combination of seven factors. First, the evidence against the appellant in general was overwhelming; thus, the members would almost certainly have come to the same conclusions without the military judge's instruction on the appellant's silence. Second, in three one-on-one scenarios, the victims' testimony called special attention to the fact that the appellant did not refute it; hence, any hope of the members failing to notice this evidentiary gap was unrealistic. Third, the members' findings demonstrate that they did *not* hold the appellant's silence against him when they found him not guilty of one of the charged rapes despite the fact that the military judge gave the instruction on the appellant's right not to testify.

Fourth, the instruction given was an accurate statement of the law. Fifth, there is absolutely no evidence in the record to suggest that the members ignored the judge's instruction, and held the appellant's silence against him. Sixth, in the absence of credible evidence to the contrary, we normally presume the court members understood and followed the military judge's instructions. *United States v. Holt,* 33 M.J. 400, 408 (C.M.A.1991).

Finally, since we have no indication that the court members were influenced by the military judge's instruction so as to hold the

appellant's silence against him, a finding of prejudice requires us to make the same assumptions upon which a presumption of prejudice would rely, and which the Supreme Court found so improbable in *Lakeside.* Again, those two assumptions are: (1) that the members did not notice that the appellant did not testify, and therefore did not draw adverse inferences on their own, and (2) that the members totally disregarded the military judge's instruction and affirmatively gave weight to what they were told not to consider at all.

### *Lakeside's* "Speculative" Assumptions

I find both assumptions too great a leap of faith in this case. As for the first assumption, that the members did not notice that the accused did not testify, my experience is that military members in general are far too perceptive to miss the fact that an accused did not testify, particularly when the accused is the only one besides the testifying victim who was present during the alleged offense. In this case, where three separate victims testified to one-on-one encounters with the appellant, the latter's silence was undoubtedly noticed by the members. Assuming the members realized the obvious fact that the appellant did not testify, they might well, without a curative instruction, draw adverse inferences against the appellant from his lack of testimony.

As for the Supreme Court's second-named assumption—that the members totally disregarded the judge's instruction and affirmatively gave weight to what they were told not to consider at all—I submit that if it is "very doubtful" that a civilian jury would totally disregard the instructions of a judge, it is even more doubtful that military members would do so. Military personnel are accustomed to following orders, and they normally show great deference for the rights of a military member accused of an offense. Moreover, since we normally presume that members *follow* the military judge's instructions, *Holt,* 33 M.J. at 408, a finding of actual prejudice in this case should require something more than a mere assumption that the members did *not* comply with the military judge's instruction.

Accordingly, I respectfully dissent from the majority's decision to set aside the findings and sentence based on this assignment of error.

Chief Judge DORMAN concurs.

VILLEMEZ, Judge (concurring in part, dissenting in part):

I concur with the majority's conclusions as to the factual and legal sufficiency of the evidence in this case, and I also agree with Senior Judge Ritter's nonconcurrence in the majority's application of a presumption of prejudice in this case. I do not, however, agree with either the majority or Senior Judge Ritter in their determinations that the military judge erred in giving the questioned instruction.

While I believe the majority opinion provides an excellent discussion and a useful guide for military justice practitioners in dealing with this important instructional issue, I disagree with its ex-post-factoesque application to the specific facts of this case. I do not believe that any authoritative source then-directed the trial judge in this case to be sure to clearly articulate on the record the specific reasons for concluding that the interests of justice dictated his decision to give the questioned instruction over defense objection. Thus, while military judges in the future will have this case as a valuable guide, regarding how to make a clear record for appellate review as to his or her rationale in reaching an in-the-interest-of-justice determination in similar situations, I do not believe that it should be retroactively imposed in this case.

As discussed in the two other opinions in this case, since the military judge did not articulate the reasons for his decision regarding the instructional issue, this Court examines the issue *de novo*. In doing so, I conclude, for the reasons set forth below, that the facts and circumstances clearly dictated that the military judge should give the questioned instruction, despite the defense's diverse desires. The majority opinion indicates that it does not think that this is one of those " 'most unusual cases' that warranted giving the instruction over defense objec-

tion." I do not agree that this case merely embodies "[t]he *standard* fear that members might hold an accused's silence against [the accused, which] has already been accounted for by the President and resolved by giving the election to the defense team...." (Emphasis added.)

The majority states:

Based on our collective experience, it is not hard to see why the defense team was so concerned. After hearing from numerous witnesses on the merits, including comprehensive testimony from the victims, a 37-year-old senior petty officer, with his liberty, military career, and potential retirement pension at stake, failed to testify in his own behalf. For a panel of members, that could easily be taken the wrong way.

*Exactly!* But while the majority concludes these factors somehow cut against the decision of the military judge to give the instruction over defense objection, it does just the opposite. This is not a paper case consisting of a failure-to-go offense committed by a young, junior servicemember, who has been in the Navy or Marine Corps all of 10 minutes. Rather, it is one involving numerous, very serious charges, involving multiple young, unwilling, female civilian victims, linked to the appellant, the Navy Recruiter in their rural Kentucky area, by their interest in joining the Navy. Victims of the appellant's criminal conduct, they had placed their trust and faith in a senior petty officer, who to them *was* the Navy. In long line, they each, in turn, marched into the courtroom, sat before the court and the members and testified under oath as to the charged offenses. The appellant could only sit there and watch in silence as they built in word and presence a strong case against him. When it was his turn to directly and vocally defend himself—with so much to lose at this stage in his Navy career—he continued to just sit there in front of the members in silence, which is certainly his right. However, even given the extensive defense efforts to win over the members, as chronicled in the majority opinion, I believe, as high-caliber and truly competent as are military members traditionally, the average member in this case, quite naturally, must have begun to

think, to wonder, and, perhaps "dangerously" for the interests of the accused, to speculate as to why he did not testify in his own behalf. Clearly—in the interest of justice-the military judge was compelled to instruct the members concerning the accused's right to remain silent at trial, despite the defense's contrary stated preference.

The fact that this Court is unanimous in affirming the legal sufficiency of the case is a certain measure of the quality and persuasiveness of the Government's case against the appellant, as is this Court's unanimity in concluding—beyond a reasonable doubt—that the appellant committed each of the offenses of which he stands convicted. Additionally, the sentence awarded by the members may reflect the power of the Government's case against the appellant: confinement for 15 years, reduction to E–1, forfeiture of all pay and allowances, and a dishonorable discharge. I say again, the questioned instruction needed to be given by the military judge in the interest of justice.

The Supreme Court has told us that while it may not always be wise for a judge to give a cautionary instruction over a defendant's objection, it is permissible to do so in the interests of justice. *Lakeside v. Oregon*, 435 U.S. 333, 340–41, 98 S.Ct. 1091 (1978). *See also* MIL. R. EVID. 301(g), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) and its Analysis at MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), App. 22, at A22–6–7. Thus, the key issue in this case is whether the military judge made the correct determination that the "interest of justice" dictated that he give the questioned instruction, even over defense objection. We sit in our Washington, D.C. chambers and read and decide from a cold record of trial. The trial judge was present in the courtroom as the drama that was a hotly contested court-martial unfolded before him. He directly observed all of the courtroom participants—the accused, all counsel involved, the witnesses, and the members. He could see and evaluate the reaction of the members, as they watched the sworn testimony of these young, female victims, as they related how this authority figure, who represented the

Navy to them, took unwelcome physical advantage of them. . . .

It is the military judge's quintessential duty and responsibility to ensure that an accused receives a fair trial, an important aspect of which is for the military judge to completely and correctly instruct the members. "This is especially so where the natural inclination of the members may conflict with fundamental constitutional rights." *United States v. Jackson*, 6 M.J. 116, 117 (C.M.A.1979). A situation that existed, I believe, in this case.

The fact that the military judge forgot his promise and gave the questioned instruction as the final instruction he provided the members is not a case-determinative factor. To place an inordinate weight on the position of the instruction in the queue of guidance given the members, is to fail to afford the members due credit for being alert and properly fulfilling their duties and responsibilities, which—based on my 30–plus years of experience in the military justice system—is something I am unwilling to do.

As the Supreme Court, again in *Lakeside*, stated:

> The petitioner's argument would require indulgence in two very doubtful assumptions: First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all. Federal constitutional law cannot rest on speculative assumptions so dubious as these.

435 U.S. at 340, 98 S.Ct. 1091 (footnotes omitted).

I will be interested to see how this Court in the future handles a case in which the military judge, guided and fortified by this decision, complies with the defense request and does not give this instruction, only to have the issue on appeal be that the clear interests of justice dictated that the instruction in fact be given. Despite some talk of waiver and other similar principles, in point of fact, the ultimate answer must be that it is the military judge's ultimate, almost-sacred

responsibility to ensure a fair and just trial. Thus, the clear *interests of justice* certainly *must* trump any defense desires regarding the considered instruction, despite the technical wording of Mil. R. Evid. 301(g), which states the military judge "may" give the instruction in those circumstances. What would it take for the interests of justice to rule in an accused's-right-to-remain-silent-at-trial-instruction debate? Perhaps as a base line, a case where a 37–year–old, married, E–6 Navy Recruiter in rural Kentucky is charged with a number of sex-related offenses involving four, unwilling female high school girls, who were interested in joining the Navy, and who provided detailed testimony at trial about the charged offenses....

The Government tried this case once already in 1998. (And where are all the key witnesses 6 years later?) Now, the majority opinion sets aside the findings and the sentence and requires the convening authority to decide between ordering a rehearing or seeing these very serious charges and specifications dismissed. As Justice Benjamin Cardoza offered in *Snyder v. Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674 (1934): "[J]ustice, though due the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." For the reasons discussed above, I believe this Court's decision in this case places an improper and unnecessary weight on the Government's side of the scales of justice.