Judge EFFRON
delivered the opinion of the Court.
At a general court-martial composed of officer and enlisted members, Appel-lee/Cross-Appellant (Appellee) was convicted, contrary to his pleas, of rape, violating a lawful order (three specifications), non-foreible sodomy, adultery (two specifications), indecent assault (two specifications), communicating indecent language (three specifications), impeding an investigation (three specifications), and furnishing alcohol to minors (two specifications), in violation of Articles 92, 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 925, and 934 (2000), respectively. The adjudged sentence included a dishonorable discharge, confinement for a period of fifteen years, forfeiture of all pay and allowances, and reduction in pay grade to E-l.
The convening authority approved the sentence, suspended execution of the adjudged forfeitures, and waived execution of automatic forfeitures for a period of six months under Article 58b, UCMJ, 10 U.S.C. § 858b (2000), with provision for payment of the suspended and waived forfeitures to Appel-lee’s wife for the benefit of his wife and son. The Navy-Marine Corps Court of Criminal Appeals set aside the findings and sentence in a published opinion, United States v. Forbes, 59 M.J. 934 (N.M.Ct.Crim.App.2004) (en bane).
The Judge Advocate General of the Navy certified the case to this Court for review of the following issues:
I. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THE MILITARY JUDGE COMMITTED REVERSIBLE ERROR BY GIVING THE STANDARD INSTRUCTION ON APPELLEE’S SILENCE OVER APPELLEE’S OBJECTION WHEN THE MILITARY JUDGE BELIEVED THE INSTRUCTION WAS NECESSARY TO PREVENT THE MEMBERS FROM QUESTIONING APPEL-LEE’S SILENCE AND HOLDING IT AGAINST HIM.
II. SHOULD THE COURT FIND THE MILITARY JUDGE DID ERR, WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THERE WAS PRESUMPTION OF PREJUDICE FOR THIS INSTRUCTIONAL ER *356 ROR, REQUIRING AUTOMATIC REVERSAL UNLESS THE GOVERNMENT REBUTS THE PRESUMPTION BY A PREPONDERANCE OF THE EVIDENCE.
On Appellee’s cross-petition, we granted review of the following modified issue:
WHETHER THE COURT OF CRIMINAL APPEALS ERRED IN ADDRESSING THE ISSUE OF FACTUAL AND LEGAL SUFFICIENCY OF THE EVIDENCE IN LIGHT OF ITS DECISION TO REVERSE ON AN INSTRUCTIONAL ERROR TO MEMBERS.
The Comet of Criminal Appeals concluded that the military judge erred in giving an instruction, over defense counsel’s objection, regarding Appellee’s silence. Forbes, 59 M.J. at 940. The court determined that the error was prejudicial, applying a presumption of prejudice under the circumstances of the case. Id. at 941-42. In addition, the court addressed the issues of factual and legal sufficiency. Id. at 935-36. For the reasons set forth below, we answer the certified and granted issues in the negative, and affirm the decision of the Court of Criminal Appeals.
I. INSTRUCTIONAL ISSUES
A. THE RULE GOVERNING INSTRUCTIONS WHEN AN ACCUSED DOES NOT TESTIFY AT TRIAL
The Manual for Courts-Martial contains an express rule governing the right of the defense to request or preclude an instruction when the accused does not testify at trial:
When the accused does not testify at trial, defense counsel may request that the members of the court be instructed to disregard that fact and not to draw any adverse inference from it. Defense counsel may request that the members not be so instructed. Defense counsel’s election shall be binding upon the military judge except that the military judge may give the instruction when the instruction is necessary in the interests of justice.
Military Rule of Evidence (M.R.E.) 301(g), included in Manual for Courts-Martial, United States (2002 ed.) (2002 MCM), pt. III. Under the rule, the accused in a court-martial has the absolute right to this protective instruction upon request by defense counsel. If the defense counsel requests that the members not receive such an instruction, that request is “binding” upon the military judge, subject only to the military judge’s determination that the instruction is “necessary in the interests of justice.”
M.R.E. 301(g) was promulgated in the aftermath of the Supreme Court’s decision in Lakeside v. Oregon, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). See 2002 MCM Analysis of the Military Rules of Evidence A22-7 [hereinafter Drafter’s Analysis]. The Drafter’s Analysis offers the following observation concerning Lakeside:
Although the Supreme Court has held that it is not unconstitutional for a judge to instruct a jury over the objection of the accused to disregard the accused’s silence, it has also stated: “It may be wise for a trial judge not to give such a cautionary instruction over a defendant’s objection.”
Drafter’s Analysis at A22-7 (quoting Lakeside, 435 U.S. at 340-41, 98 S.Ct. 1091). The Drafter’s Analysis then explains the rationale for including the rule in the MCM:
Rule 301(g) recognizes that the decision to ask for a cautionary instruction is one of great tactical importance for the defense and generally leaves that decision solely within the hands of the defense. Although the military judge may give the instruction when it is necessary in the interests of justice, the intent of the Committee is to leave the decision in the hands of the defense in all but the most unusual cases.
Drafter’s Analysis at A22-7. The rule reflects the President’s authority to grant members of the armed forces rights more protective than those required by the Constitution. See United States v. Lopez, 35 M.J. 35, 39 (C.M.A.1992).
B. PROCEEDINGS AT TRIAL AND ON APPEAL
At the close of the case on the merits, the military judge conducted a session under Article 39(a), UCMJ, 10 U.S.C. § 839 (2000), to *357 discuss proposed instructions with counsel. The military judge stated that he intended to give “[t]he instruction on the accused’s silence.” He then quoted the proposed instruction: “The accused has an absolute right to remain silent. You are not to draw any inference adverse to the accused.” Defense counsel objected to the proposed instruction, which led to the following colloquy:
MJ: You object to it? Well, I will have to consider that. That is a standard instruction. Normally it is given and its intent— my intent is to protect the accused from any adverse feelings by the members. I know it calls attention to it, and that is probably your objection to it. I understand. Do you want to be heard further? ADC: No, sir.
MJ: Let me think about that one.
After a short recess, the military judge reconvened the Article 89(a) session and returned to the proposed instruction:
MJ: There were two issues outstanding, one was whether I would give the instruction on the accused’s silence. I feel that that is necessary to give unless the defense has case law to cite for the proposition that I shouldn’t give it even though the defense objects.
ADC: You feel it’s necessary?
MJ: I do feel it’s necessary.
ADC: We would object to giving them that instruction.
MJ: Do you have any case law to support the proposition it’s not to be given over defense objection?
ADC: No, sir. Other courts have argued in the military — have objected—
MJ: No case law?
ADC: No, sir.
MJ: I just think it’s important to tell the members that so they don’t go back and ask the question about why the accused didn’t testify. That’s my thought — and also instruct them that they are not to hold that against the accused in any way.
ADC: Yes, sir.
After another brief recess, the military judge noted for the record that the defense had made a request during the recess concerning the sequence of the proposed instruction. The military judge stated that the defense had requested, and he had agreed, to not give the disputed instruction as the last instruction, but instead to give it before instructing the members on findings by exceptions. The trial counsel did not object to the proposed sequence.
Despite this assurance, the disputed instruction was the last instruction provided to the members by the military judge. When the members then left the courtroom for a brief recess prior to closing arguments, the military judge recognized his misstep regarding the sequence of instructions: “Counsel, I apologize. It was an oversight on my part.”
After announcement of the findings, defense counsel moved for a mistrial citing several issues, including the content and timing of the disputed instruction. The military judge denied the motion, adding: “There was error, my error, that I had agreed to give the accused’s silence instruction other than the last instruction in my substantive instructions. However, I don’t think that that was an error of such a grave nature to warrant the extraordinary remedy of a mistrial.”
In the Court of Criminal Appeals, Appellee contended that the military judge had erred in giving the failure-to-testify instruction over his objection. The court, in an en bane decision, concluded that the military judge erred, and that the error was prejudicial. Forbes, 59 M.J. at 942. One judge concluded that the military judge erred in giving instruction over defense objection, but that the error was not prejudicial. Id. at 943 — 44 (Rit-ter, J., concurring in part and dissenting in part). Another judge concluded that there was no error. Id. at 945-47 (Villemez, J., concurring in part and dissenting in part).
C. DISCUSSION
1. Standard of review
We consider allegations of error involving mandatory instructions under a de novo standard of review. See United States v. Smith, 50 M.J. 451, 455 (C.A.A.F.1999). *358 We review issues concerning non-mandatory instructions for an abuse of discretion. United States v. Damatta-Olivera, 37 M.J. 474, 478 (C.M.A.1993).
The court below noted that because M.R.E. 301(g) requires a balancing of both mandatory and non-mandatory components, the standard of review should take into account the specific attributes of the rule. Forbes, 59 M.J. at 939. The court noted that when there is a defense objection to the instruction, a military judge is bound by the defense election unless the judge performs a balancing test that weighs the defense concerns against the case-specific interests of justice. Id. In that context, the court concluded the most appropriate analogy could be found in the standard for reviewing a military judge’s application of the balancing test under M.R.E. 403 (exclusion of relevant evidence on the grounds of prejudice, confusion, or waste of time). See Forbes, 59 M.J. at 939 (citing United States v. Manns, 54 M.J. 164, 166 (C.A.A.F.2000)). Applying that standard, the court offered the following approach to the standard of review:
[W]hen a military judge gives a fail-to-testify instruction over defense objection after having identified the case-specific “interests of justice” that support his decision and articulating his analysis of those interests relative to the defense election, then he should be accorded great deference under a standard of review of abuse of discretion. If he identifies the interests of justice in question but does not articulate his balancing of those interests with the defense election, he is accorded less deference. If he does not identify interests of justice at all, the standard of review is de novo.
Forbes, 59 M.J. at 939. The court also observed that a military judge’s decision to override the otherwise binding election of the defense must be based on something more than a generalized “fear that the members would hold the appellant’s silence against him” because “such a fear could be argued in every case of silence of the accused.” Id. at 939-40. The court then noted that the military judge did not identify the specific interests of justice at stake in the present case. In that context, the court concluded that the decision was subject to de novo review. We agree with the court below that the standard of review for issues under M.R.E. 403 provides an appropriate analogy. We adopt the framework articulated by the court, both in terms of the general approach to the standard of review, and the application of that approach to the present case.
2. Review of military judge’s decision to override the defense election
The court below reviewed the record and concluded that the military judge did not consider any case-specific interests of justice before overriding the defense election. Forbes, 59 M.J. at 939. The court concluded: “Based on our review of the record, we find that the only reason the military judge gave the instruction was his fear that the members would hold the appellant’s silence against him, unless specifically instructed not to do so.” Id. The court added:
The military judge’s failure to articulate any “interests of justice,” other than the standard fear of member misuse of the appellant’s silence, indicates that such “interests of justice” simply did not exist. The standard fear that members might hold an accused’s silence against him has already been accounted for by the President and resolved by giving the election to the defense team, where we think it rightfully belongs. In the words of the Analysis to Mil.R.Evid. 301(g), we do not think that this is one of those “most unusual cases” that warranted giving the instruction over defense objection.
Id. at 940.
The Government’s brief offers a number of theories as to why the military judge might have concluded that his evaluation of the interests of justice should prevail over the defense election in the present case, including the seriousness of the charges of sexual misconduct; the similar factual scenario surrounding each of the charges; the testimony of the alleged victims identifying Appellee as the perpetrator and as the only other witness to the events; and the likelihood that the members would expect rebuttal testimony from a person of his status as married enlisted person with eighteen years *359 of service. None of these theories identifies anything unusual that would differentiate this court-martial from other cases involving mid-level noncommissioned officers charged with sexual misconduct in which the defense might prefer not to have the accused’s silence specifically called to the attention of the members. The Government’s brief merely notes factors that, in any particular case, might weigh in defense counsel’s exercise of tactical or strategic judgment about how best to conduct the defense. The President, in Rule for Courts-Martial 310(g) has determined that this decision should be left to the defense except in an unusual case. A generalized fear that the panel will misuse an accused’s silence, by itself, does not provide a basis for concluding that the circumstances of a ease are so unusual as to warrant rejection of a defense objection to the instruction. We have conducted our own de novo review of the record to determine whether there were any unusual circumstances in the present ease so obvious that it was not necessary for the military judge to articulate reasons for providing the instruction over defense objection. We agree with the observations of the court below that such circumstances “simply did not exist” in the specific factual setting of the present case. See Forbes, 59 M.J. at 940.
3. The assessment of prejudice
The court below also addressed the standard for determining when an erroneous decision to override a defense election was prejudicial. The defense, focusing on the impact on the individual’s self-incrimination rights under the Fifth Amendment, suggested that the Government was required to prove beyond a reasonable doubt that the error was harmless, while the Government contended that the accused was responsible for demonstrating material prejudice. See id. at 940. The court rejected the defense standard because the Supreme Court in Lakeside already had treated the issue as noneonstitutional, and it also rejected the Government’s approach on the grounds that the “plain language of the rule, coupled with the strong language in the Analysis” made it inappropriate to place any burden on Appel-lee to show prejudice from a violation of this uniquely “defense-friendly” rule. Id. at 941.
Taking a “middle ground” between these positions, the Court of Criminal Appeals concluded:
[W]hen a military judge commits error by giving this instruction over defense objection in the absence of articulated case-specific interests of justice, a presumption of prejudice results. The Government then bears the burden of showing by a preponderance of the evidence why the appellant was not prejudiced by the instruction. Admittedly, this may be a difficult burden for the Government to bear. But, this court did not write the Rule, and on the issue of an appropriate test for prejudice, we feel compelled to take our cues from the President’s language that so clearly favors the military accused.

Id.

In deciding that the Government did not carry its burden of rebutting the presumption of prejudice, the court emphasized two considerations. First, with respect to the Government’s reliance on the strength of the prosecution case, the court noted that the prosecution’s evidence, while strong, was not dispositive of the factual and legal issues of guilt. Even in the face of a formidable prosecution case, the members could have found reasonable doubt on one or more of the charges in light of the defense’s twenty-two witnesses, two stipulations of expected testimony, a stipulation of fact, and several other exhibits. The court also pointed out that the defense offered serious and repeated objections to the instruction, then attempted to ensure that it was not the last instruction, and finally moved for a mistrial. The court concluded that these efforts demonstrate that, in the present case, it was “manifest that, for the defense team, the instruction was a potential show-stopper.” Id. at 941-42.
The test for prejudice articulated by the court below represents a well-reasoned approach in light of the specific requirements of M.R.E. 301(g). We adopt this approach, and *360 agree with the lower court’s application of the test to the present ease.
II. THE DISCUSSION OF LEGAL AND FACTUAL SUFFICIENCY IN THE OPINION OF THE COURT OF CRIMINAL APPEALS
Under Article 66(e), UCMJ, 10 U.S.C. § 866(c), the Court of Criminal Appeals:
may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.
10 U.S.C. § 866(c)(2000). Article 66(c) charges the Court of Criminal Appeals with reviewing both the legal correctness of the trial-level proceedings and the legal and factual sufficiency of the evidence to support the findings of guilty, as well as the appropriateness of the approved sentence.
In its opinion in the present case, the Court of Criminal Appeals addressed the state of the evidence prior to discussing the instructional issue. After discussing Article 66(c) and applicable precedent, the court offered the following brief assessment as to factual sufficiency:
We conclude that a reasonable factfinder could properly have found, beyond a reasonable doubt, that the appellant committed each of the offenses of which he stands convicted. Moreover, after careful consideration, we are convinced beyond a reasonable doubt that the appellant committed each of those same offenses.
Forbes, 59 M. J. at 936.
Appellee contends that the lower court erred by evaluating the legal and factual sufficiency of the evidence of guilt in light of its subsequent resolution of the appeal on the instructional issue. We disagree. While there may be good reasons in a particular case for an intermediate appellate court to focus only on ease-dispositive issues, the court is not precluded from offering alternative holdings. In the present case, for example, the court below might have wanted this Court to know that it had performed its responsibility under Article 66(c) to weigh the legal and factual sufficiency of the evidence in the event we were to disagree with its decision on the instructional issue. In the present case, by affirming the decision of the court below on the instructional issue, our decision will result in setting aside the findings and sentence. Once the findings are set aside, the views of the court below on the sufficiency of the evidence with respect to those findings are irrelevant to any further proceeding. If, after a rehearing, there is a conviction that is reviewed by the court below, the court will be obligated to conduct a de novo review under Article 66(c) based upon the record of the rehearing, not the record of the proceedings which resulted in the findings being set aside.
III. CONCLUSION
The certified questions and the granted issue are answered in the negative. The decision of the United States Navy-Marine Corps Court of Criminal Appeals setting aside the findings and the sentence is affirmed. A rehearing may be ordered in accordance with decision of the Court of Criminal Appeals.