UNITED STATES, Appellant/Cross-Appellee

v.

Todd R. FORBES, Quartermaster First Class
U.S. Navy, Appellee/Cross-Appellant

No. 04-5005

Crim. App. No. 9901454

United States Court of Appeals for the Armed Forces

Argued March 2, 2005

Decided August 25, 2005

EFFRON, J., delivered the opinion of the Court, in which GIERKE, C.J., and BAKER and ERDMANN, JJ., joined. CRAWFORD, J., filed a dissenting opinion.

Counsel

For Appellee/Cross-Appellant: John B. Wells, Esq., (argued); Captain Richard A. Viczorek, USMCR (on brief).


For Appellant/Cross-Appellee: Lieutenant Kathleen A. Helmann, JAGC, USNR (argued); Lieutenant Colonel William K. Lietzau, USMC (on brief).



Military Judge: G. E. Champagne

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of officer and enlisted members, Appellee/Cross-Appellant (Appellee) was convicted, contrary to his pleas, of rape, violating a lawful order (three specifications), non-forcible sodomy, adultery (two specifications), indecent assault (two specifications), communicating indecent language (three specifications), impeding an investigation (three specifications), and furnishing alcohol to minors (two specifications), in violation of Articles 92, 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 925, and 934 (2000), respectively. The adjudged sentence included a dishonorable discharge, confinement for a period of fifteen years, forfeiture of all pay and allowances, and reduction in pay grade to E-1.

The convening authority approved the sentence, suspended execution of the adjudged forfeitures, and waived execution of automatic forfeitures for a period of six months under Article 58b, UCMJ, 10 U.S.C. § 858b (2000), with provision for payment of the suspended and waived forfeitures to Appellee's wife for the benefit of his wife and son. The Navy-Marine Corps Court of Criminal Appeals set aside the findings and sentence in a published opinion, United States v. Forbes, 59 M.J. 934 (N-M. Ct. Crim. App. 2004) (en banc).

The Judge Advocate General of the Navy certified the case to this Court for review of the following issues:

   I.    WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL
         APPEALS ERRED WHEN IT HELD THE MILITARY JUDGE
         COMMITTED REVERSIBLE ERROR BY GIVING THE STANDARD
         INSTRUCTION ON APPELLEE'S SILENCE OVER APPELLEE'S
         OBJECTION WHEN THE MILITARY JUDGE BELIEVED THE
         INSTRUCTION WAS NECESSARY TO PREVENT THE MEMBERS
         FROM QUESTIONING APPELLEE'S SILENCE AND HOLDING
         IT AGAINST HIM.

   II.   SHOULD THE COURT FIND THE MILITARY JUDGE DID ERR,
         WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL
         APPEALS ERRED WHEN IT HELD THERE WAS PRESUMPTION
         OF PREJUDICE FOR THIS INSTRUCTIONAL ERROR,
         REQUIRING AUTOMATIC REVERSAL UNLESS THE
         GOVERNMENT REBUTS THE PRESUMPTION BY A
         PREPONDERANCE OF THE EVIDENCE.

On Appellee's cross-petition, we granted review of the following modified issue:

         WHETHER THE COURT OF CRIMINAL APPEALS ERRED IN
         ADDRESSING THE ISSUE OF FACTUAL AND LEGAL
         SUFFICIENCY OF THE EVIDENCE IN LIGHT OF ITS
         DECISION TO REVERSE ON AN INSTRUCTIONAL ERROR TO
         MEMBERS.

The Court of Criminal Appeals concluded that the military judge erred in giving an instruction, over defense counsel's objection, regarding Appellee's silence. Forbes, 59 M.J. at 940. The court determined that the error was prejudicial, applying a presumption of prejudice under the circumstances of the case. Id. at 941-42. In addition, the court addressed the issues of factual and legal sufficiency. Id. at 935-36. For the reasons set forth below, we answer the certified and granted

3

issues in the negative, and affirm the decision of the Court of
Criminal Appeals.


I.   INSTRUCTIONAL ISSUES

A.   THE RULE GOVERNING INSTRUCTIONS
WHEN AN ACCUSED DOES NOT TESTIFY AT TRIAL

The Manual for Courts-Martial contains an express rule
governing the right of the defense to request or preclude an
instruction when the accused does not testify at trial:

> When the accused does not testify at trial, defense
> counsel may request that the members of the court be
> instructed to disregard that fact and not to draw any
> adverse inference from it.  Defense counsel may
> request that the members not be so instructed.
> Defense counsel's election shall be binding upon the
> military judge except that the military judge may give
> the instruction when the instruction is necessary in
> the interests of justice.

Military Rule of Evidence (M.R.E.) 301(g), included in Manual
for Courts-Martial, United States (2002 ed.) (2002 MCM), pt.
III.  Under the rule, the accused in a court-martial has the
absolute right to this protective instruction upon request by
defense counsel.  If the defense counsel requests that the
members not receive such an instruction, that request is
"binding" upon the military judge, subject only to the military
judge's determination that the instruction is "necessary in the
interests of justice."

United States v. Forbes, No. 04-5005/NA

M.R.E. 301(g) was promulgated in the aftermath of the Supreme Court's decision in Lakeside v. Oregon, 435 U.S. 333 (1978). See 2002 MCM Analysis of the Military Rules of Evidence A22-7 [hereinafter Drafter's Analysis]. The Drafter's Analysis offers the following observation concerning Lakeside:

> Although the Supreme Court has held that it is not unconstitutional for a judge to instruct a jury over the objection of the accused to disregard the accused's silence, it has also stated: "It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection."

Drafter's Analysis at A22-7 (quoting Lakeside, 435 U.S. at 340-41). The Drafter's Analysis then explains the rationale for including the rule in the MCM:

> Rule 301(g) recognizes that the decision to ask for a cautionary instruction is one of great tactical importance for the defense and generally leaves that decision solely within the hands of the defense. Although the military judge may give the instruction when it is necessary in the interests of justice, the intent of the Committee is to leave the decision in the hands of the defense in all but the most unusual cases.

Drafter's Analysis at A22-7. The rule reflects the President's authority to grant members of the armed forces rights more protective than those required by the Constitution. See United States v. Lopez, 35 M.J. 35, 39 (C.M.A. 1992).

B.  PROCEEDINGS AT TRIAL AND ON APPEAL

At the close of the case on the merits, the military judge conducted a session under Article 39(a), UCMJ, 10 U.S.C. § 839

(2000), to discuss proposed instructions with counsel.  The military judge stated that he intended to give "[t]he instruction on the accused's silence."  He then quoted the proposed instruction:  "The accused has an absolute right to remain silent.  You are not to draw any inference adverse to the accused."  Defense counsel objected to the proposed instruction, which led to the following colloquy:

> MJ:  You object to it?  Well, I will have to consider that.  That is a standard instruction.  Normally it is given and its intent -- my intent is to protect the accused from any adverse feelings by the members.  I know it calls attention to it, and that is probably your objection to it.  I understand.  Do you want to be heard further?
>
> ADC:  No, sir.
>
> MJ:  Let me think about that one.

After a short recess, the military judge reconvened the Article 39(a) session and returned to the proposed instruction:

> MJ:  There were two issues outstanding, one was whether I would give the instruction on the accused's silence.  I feel that that is necessary to give unless the defense has case law to cite for the proposition that I shouldn't give it even though the defense objects.
>
> ADC:  You feel it's necessary?
>
> MJ:  I do feel it's necessary.
>
> ADC:  We would object to giving them that instruction.
>
> MJ:  Do you have any case law to support the proposition it's not to be given over defense objection?

6

ADC: No, sir. Other courts have argued in the military -- have objected --

MJ: No case law?

ADC: No, sir.

MJ: I just think it's important to tell the members that so they don't go back and ask the question about why the accused didn't testify. That's my thought -- and also instruct them that they are not to hold that against the accused in any way.

ADC: Yes, sir.

After another brief recess, the military judge noted for the record that the defense had made a request during the recess concerning the sequence of the proposed instruction. The military judge stated that the defense had requested, and he had agreed, to not give the disputed instruction as the last instruction, but instead to give it before instructing the members on findings by exceptions. The trial counsel did not object to the proposed sequence.

Despite this assurance, the disputed instruction was the last instruction provided to the members by the military judge. When the members then left the courtroom for a brief recess prior to closing arguments, the military judge recognized his misstep regarding the sequence of instructions: "Counsel, I apologize. It was an oversight on my part."

After announcement of the findings, defense counsel moved for a mistrial citing several issues, including the content and

timing of the disputed instruction.  The military judge denied
the motion, adding:  "There was error, my error, that I had
agreed to give the accused's silence instruction other than the
last instruction in my substantive instructions.  However, I
don't think that that was an error of such a grave nature to
warrant the extraordinary remedy of a mistrial."

In the Court of Criminal Appeals, Appellee contended that
the military judge had erred in giving the failure-to-testify
instruction over his objection.  The court, in an en banc
decision, concluded that the military judge erred, and that the
error was prejudicial.  Forbes, 59 M.J. at 942.  One judge
concluded that the military judge erred in giving instruction
over defense objection, but that the error was not prejudicial.
Id. at 943-44 (Ritter, J., concurring in part and dissenting in
part).  Another judge concluded that there was no error.  Id. at
945-47 (Villemez, J., concurring in part and dissenting in
part).

## C.  DISCUSSION

### 1.  Standard of review

We consider allegations of error involving mandatory
instructions under a de novo standard of review. See United
States v. Smith, 50 M.J. 451, 455 (C.A.A.F. 1999).
We review issues concerning non-mandatory instructions for an

abuse of discretion.  United States v. Damatta-Olivera, 37 M.J.
474, 478 (C.M.A. 1993).

The court below noted that because M.R.E. 301(g) requires a
balancing of both mandatory and non-mandatory components, the
standard of review should take into account the specific
attributes of the rule.  Forbes, 59 M.J. at 939.  The court
noted that when there is a defense objection to the instruction,
a military judge is bound by the defense election unless the
judge performs a balancing test that weighs the defense concerns
against the case-specific interests of justice.  Id.  In that
context, the court concluded the most appropriate analogy could
be found in the standard for reviewing a military judge's
application of the balancing test under M.R.E. 403 (exclusion of
relevant evidence on the grounds of prejudice, confusion, or
waste of time).  See Forbes, 59 M.J. at 939 (citing United
States v. Manns, 54 M.J. 164, 166 (C.A.A.F. 2000)).  Applying
that standard, the court offered the following approach to the
standard of review:

> [W]hen a military judge gives a fail-to-testify
> instruction over defense objection after having
> identified the case-specific "interests of justice"
> that support his decision and articulating his
> analysis of those interests relative to the defense
> election, then he should be accorded great deference
> under a standard of review of abuse of discretion.  If
> he identifies the interests of justice in question but
> does not articulate his balancing of those interests
> with the defense election, he is accorded less

>       deference.  If he does not identify interests of
>       justice at all, the standard of review is de novo.

Forbes, 59 M.J. at 939.  The court also observed that a military

judge's decision to override the otherwise binding election of

the defense must be based on something more than a generalized

"fear that the members would hold the appellant's silence

against him" because "such a fear could be argued in every case

of silence of the accused."  Id. at 939-40.  The court then

noted that the military judge did not identify the specific

interests of justice at stake in the present case.  In that

context, the court concluded that the decision was subject to de

novo review.  We agree with the court below that the standard of

review for issues under M.R.E. 403 provides an appropriate

analogy.  We adopt the framework articulated by the court, both

in terms of the general approach to the standard of review, and

the application of that approach to the present case.

2.   Review of  military judge's decision to override the
     defense election

The court below reviewed the record and concluded that the

military judge did not consider any case-specific interests of

justice before overriding the defense election.  Forbes, 59 M.J.

at 939.  The court concluded:  "Based on our review of the

record, we find that the only reason the military judge gave the

instruction was his fear that the members would hold the

10

appellant's silence against him, unless specifically instructed

not to do so."  Id.  The court added:

> The military judge's failure to articulate any
> "interests of justice," other than the standard fear
> of member misuse of the appellant's silence, indicates
> that such "interests of justice" simply did not exist.
> The standard fear that members might hold an accused's
> silence against him has already been accounted for by
> the President and resolved by giving the election to
> the defense team, where we think it rightfully
> belongs.  In the words of the Analysis to Mil.R.Evid.
> 301(g), we do not think that this is one of those
> "most unusual cases" that warranted giving the
> instruction over defense objection.

Id. at 940.

The Government's brief offers a number of theories as to

why the military judge might have concluded that his evaluation

of the interests of justice should prevail over the defense

election in the present case, including the seriousness of the

charges of sexual misconduct; the similar factual scenario

surrounding each of the charges; the testimony of the alleged

victims identifying Appellee as the perpetrator and as the only

other witness to the events; and the likelihood that the members

would expect rebuttal testimony from a person of his status as

married enlisted person with eighteen years of service.  None of

these theories identifies anything unusual that would

differentiate this court-martial from other cases involving mid-

level noncommissioned officers charged with sexual misconduct in

which the defense might prefer not to have the accused's silence

11

specifically called to the attention of the members.  The Government's brief merely notes factors that, in any particular case, might weigh in defense counsel's exercise of tactical or strategic judgment about how best to conduct the defense.  The President, in Rule for Courts-Martial 310(g) has determined that this decision should be left to the defense except in an unusual case.  A generalized fear that the panel will misuse an accused's silence, by itself, does not provide a basis for concluding that the circumstances of a case are so unusual as to warrant rejection of a defense objection to the instruction.  We have conducted our own de novo review of the record to determine whether there were any unusual circumstances in the present case so obvious that it was not necessary for the military judge to articulate reasons for providing the instruction over defense objection.  We agree with the observations of the court below that such circumstances "simply did not exist" in the specific factual setting of the present case.  See Forbes, 59 M.J. at 940.

3.    The assessment of prejudice

The court below also addressed the standard for determining when an erroneous decision to override a defense election was prejudicial.  The defense, focusing on the impact on the individual's self-incrimination rights under the Fifth Amendment, suggested that the Government was required to prove

12

beyond a reasonable doubt that the error was harmless, while the Government contended that the accused was responsible for demonstrating material prejudice.  See id. at 940.  The court rejected the defense standard because the Supreme Court in Lakeside already had treated the issue as nonconstitutional, and it also rejected the Government's approach on the grounds that the "plain language of the rule, coupled with the strong language in the Analysis" made it inappropriate to place any burden on Appellee to show prejudice from a violation of this uniquely "defense-friendly" rule.  Id. at 941.

Taking a "middle ground" between these positions, the Court of Criminal Appeals concluded:

> [W]hen a military judge commits error by giving this instruction over defense objection in the absence of articulated case-specific interests of justice, a presumption of prejudice results.  The Government then bears the burden of showing by a preponderance of the evidence why the appellant was not prejudiced by the instruction.  Admittedly, this may be a difficult burden for the Government to bear.  But, this court did not write the Rule, and on the issue of an appropriate test for prejudice, we feel compelled to take our cues from the President's language that so clearly favors the military accused.

Id.

In deciding that the Government did not carry its burden of rebutting the presumption of prejudice, the court emphasized two considerations.  First, with respect to the Government's reliance on the strength of the prosecution case, the court

13

noted that the prosecution's evidence, while strong, was not dispositive of the factual and legal issues of guilt. Even in the face of a formidable prosecution case, the members could have found reasonable doubt on one or more of the charges in light of the defense's twenty-two witnesses, two stipulations of expected testimony, a stipulation of fact, and several other exhibits. The court also pointed out that the defense offered serious and repeated objections to the instruction, then attempted to ensure that it was not the last instruction, and finally moved for a mistrial. The court concluded that these efforts demonstrate that, in the present case, it was "manifest that, for the defense team, the instruction was a potential show-stopper." Id. at 941-42.

The test for prejudice articulated by the court below represents a well-reasoned approach in light of the specific requirements of M.R.E. 301(g). We adopt this approach, and agree with the lower court's application of the test to the present case.

II. THE DISCUSSION OF LEGAL AND FACTUAL SUFFICIENCY IN THE OPINION OF THE COURT OF CRIMINAL APPEALS

Under Article 66(c), UCMJ, the Court of Criminal Appeals:

> may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In

14

> considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866(c)(2000).  Article 66(c) charges the Court of Criminal Appeals with reviewing both the legal correctness of the trial-level proceedings and the legal and factual sufficiency of the evidence to support the findings of guilty, as well as the appropriateness of the approved sentence.

In its opinion in the present case, the Court of Criminal Appeals addressed the state of the evidence prior to discussing the instructional issue.  After discussing Article 66(c) and applicable precedent, the court offered the following brief assessment as to factual sufficiency:

> We conclude that a reasonable factfinder could properly have found, beyond a reasonable doubt, that the appellant committed each of the offenses of which he stands convicted.  Moreover, after careful consideration, we are convinced beyond a reasonable doubt that the appellant committed each of those same offenses.

Forbes, 59 M.J. at 936.

Appellee contends that the lower court erred by evaluating the legal and factual sufficiency of the evidence of guilt in light of its subsequent resolution of the appeal on the instructional issue.  We disagree.  While there may be good reasons in a particular case for an intermediate appellate court

15

to focus only on case-dispositive issues, the court is not precluded from offering alternative holdings.  In the present case, for example, the court below might have wanted this Court to know that it had performed its responsibility under Article 66(c) to weigh the legal and factual sufficiency of the evidence in the event we were to disagree with its decision on the instructional issue.  In the present case, by affirming the decision of the court below on the instructional issue, our decision will result in setting aside the findings and sentence. Once the findings are set aside, the views of the court below on the sufficiency of the evidence with respect to those findings are irrelevant to any further proceeding.  If, after a rehearing, there is a conviction that is reviewed by the court below, the court will be obligated to conduct a de novo review under Article 66(c) based upon the record of the rehearing, not the record of the proceedings which resulted in the findings being set aside.

## III. CONCLUSION

The certified questions and the granted issue are answered in the negative.  The decision of the United States Navy-Marine Corps Court of Criminal Appeals setting aside the findings and the sentence is affirmed.  A rehearing may be ordered in accordance with decision of the Court of Criminal Appeals.

16

CRAWFORD, Judge (dissenting):

I respectfully dissent from (1) the extensive rulemaking by the majority, and (2) the majority's failure to analyze the harmless error rule in the context of this case.  Article 59(a), Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 859(a) (2000).  I agree with Judge Learned Hand that "[i]t would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect."  Lakeside v. Oregon, 435 U.S. 333, 339 (1978).

Dissatisfied with Military Rule of Evidence (M.R.E.) 301(g), the majority today amends that rule.  Among today's innovations to M.R.E. 301(g) are: (1) a new "presumption of prejudice" for violations of the rule, (2) a requirement that military judges identify "case-specific" interests of justice -- other than "the generalized fear that the panel" would hold the appellant's silence against him; (3) a special test, borrowed by "analogy" to M.R.E. 403, balancing these interests of justice with "the defense election;" and (4) an elaborate tripartite standard of review, including a new "middle ground" that applies when condition (2) above is satisfied, but (3) is not.  Seldom has this Court engaged in so much rulemaking in a single case.

<u>Background</u>

The Supreme Court has described the "constitutional foundation" underlying the Fifth Amendment privilege against self-incrimination as:

> [T]the respect a government -- state or federal -- must accord to the dignity and integrity of its citizens.  To maintain a "fair state-individual balance," to require the government "to shoulder the entire load," . . . to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth.

<u>Miranda v. Arizona</u>, 384 U.S. 436, 460 (1966) (citation omitted).

In the military justice system, Article 31, UCMJ, 10 U.S.C. § 831, serves the same purpose:  Congress intended that article "to secure to persons subject to the Code the same rights secured to those of the civilian community under the Fifth Amendment to the Constitution of the United States -- no more and no less."  <u>United States v. Armstrong</u>, 9 M.J. 374, 380 (C.M.A. 1980) (citing <u>United States v. Eggers</u>, 3 C.M.A. 191, 195 11 C.M.R. 191, 195 (1953)).

To the extent the Fifth Amendment and Article 31 are given effect by M.R.E. 301(g), the "primary purposes" of the right against self-incrimination are:  "[1] to shield the individual's thought processes from Government inquiry and [2] to permit an individual to refuse to <u>create</u> evidence to be used against him."

   Manual for Courts-Martial, United States (2002 ed.) (MCM),

Analysis of the Military Rules of Evidence A22-5 [hereinafter

Drafter's Analysis].

   Clearly, this case does not present such threats as were

envisioned by the drafters of the Fifth Amendment or the

Military Rules of Evidence.  The Government has not sought by

any expedient to compel Appellee/Cross-Appellant's (Appellee's)

testimony, nor in any sense required him to create inculpatory

evidence.[1]  On the contrary, the military judge with obvious

deliberation determined that it was necessary to instruct the

panel (albeit against Appellee's wishes) in order to safeguard

his constitutional rights.  Where a judge gives a correct

instruction, upon determining that the interests of justice so

require, it is error to find prejudice.

   Furthermore, because the Manual for Courts-Martial nowhere

requires military judges to jump through the hoops erected by

the majority's opinion, I would resolve this case by looking to

the plain wording of M.R.E. 301(g) and the test for prejudice in

Article 59(a).

---

[1]  Nor is it reasonable to conclude that the prospect of a
cautionary instruction would itself "compel" an accused to self-
incriminate at trial.  See Bordenkircher v. Hayes, 434 U.S. 357,
363-65 (1978) (in pursuing plea bargain, prosecutor did not
exceed constitutional bounds), Miranda, 384 U.S. at 460.

United States v. Forbes, No. 04-5005/NA

Constitutional Concerns

Appellant's allegation of constitutional error is correctly resolved by reference to Lakeside.  In that decision, the Supreme Court sided with the federal courts that had "generally held that giving the protective instruction over the defendant's objection is not a constitutional violation."  Id. at 336 n.3  While Lakeside expressly addressed only the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel, I agree with the Court of Criminal Appeals (CCA) that the court implicitly rejected any due process argument by declining to address it.  United States v. Forbes, 59 M.J. 934, 940-41 (N-M. Ct. Crim. App. 2004).

Without the looming threat of constitutional error, the states have been free to adopt different approaches to the present issue.  Notably, the Supreme Judicial Court of Massachusetts recently joined what it concluded was a trend towards allowing judges to give the instruction over a defendant's objection:  "'Most courts . . . [view] the giving of such an instruction over objection as not prejudicial error.'  Our [prior contrary] rule is one that has been soundly criticized . . .  and 'carries the doctrine of self-incrimination to an absurdity.'"  Commonwealth v. Rivera, 805 N.E.2d 942, 952-53 (Mass. 2004) (citations omitted) (emphasis added).  Evocative of the Drafter's Analysis of Rule 301(g), the

4

Rivera court held, "judges should not give the instruction when asked not to do so.  We are merely saying that it is [no longer] per se reversible error to do so."  Id. at 953 n.9

### Military Rule of Evidence 301(g)

Like the individual states, the military system has its own rule.  Ours was prescribed by the President in the Manual for Courts-Martial, and establishes both the affirmative duty and discretionary authority of trial judges to instruct on an accused's right not to testify.  Specifically, before a military judge may instruct over a defense objection, M.R.E. 301(g) requires either (1) a necessity "in the interests of justice," or (2) a "most unusual" case.  Drafter's Analysis at A22-7.  Against these bare requirements, the CCA's ornamentation of the rule -- of which the majority is so enamored -- puts us in the shoes of legislators and is unfaithful to its text.  The text of Rule 301(g) (i.e., the pre-Forbes version appearing in the MCM) provides:

> When the accused does not testify at trial, defense counsel may request that the members of the court be instructed to disregard that fact and not to draw any adverse inference from it.  Defense counsel may request that the members not be so instructed.  Defense counsel's election shall be binding upon the military judge except that the military judge may give the instruction when the instruction is necessary in the interests of justice.

M.R.E. 301(g) (emphasis added).  The Drafter's Analysis notes:

> [C]ounsel for the defense may determine that this very instruction may emphasize the accused's silence, creating a prejudicial effect. Although the Supreme Court has held that <u>it is not unconstitutional for a judge to instruct a jury over the objection of the accused</u> to disregard the accused's silence, it has also stated: "It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection." Rule 301(g) recognizes that the decision to ask for a cautionary instruction is one of great tactical importance for the defense and generally leaves that decision solely within the hands of the defense. Although <u>the military judge may give the instruction when it is necessary in the interests of justice,</u> the intent of the Committee is to leave the decision in the hands of the defense in all but the most unusual cases.

Drafter's Analysis at A22-7. (citations omitted) (emphasis added).

## Case-Specific Interests of Justice

Plainly (and I must therefore assume deliberately) absent from the text of M.R.E. 301(g) and the Drafter's Analysis is the majority's new requirement that a military judge make "case-specific" factual findings on the record. Until such a requirement is placed in M.R.E. 301(g) by someone with the authority to do so, it has no place in an opinion of this Court. Indeed, when the President has desired to impose such a requirement, he has done so expressly. For example, Rule for Courts-Martial (R.C.M.) 905(d), M.R.E. 304(d)(4), M.R.E. 311(d)(4), and M.R.E. 321(f) each provides, "Where factual issues are involved in determining a motion, the military judge shall state the essential findings on the record." With those

rules, a failure to make factual findings is error, not because this Court wishes it so, but because the rules make it so. In the present case, the military judge satisfied M.R.E. 301(g) by twice stating on the record that he thought the instruction on Appellee's silence was "necessary."

> MJ: I feel that it is necessary to give [the instruction] unless the defense has case law to cite for the proposition that I shouldn't give it even though the defense objects.
>
> ADC: You feel it's necessary?
>
> MJ: I do feel it's necessary . . . . I just think it's important to tell the members that so they don't go back and ask the question about why the accused didn't testify. That's my thought -- and also instruct them that they are not to hold that against the accused in any way.

This is all M.R.E. 301(g) requires, and it is not for this Court to second-guess the circumstances of trial, or the apparent necessity of a cautionary instruction.

Indeed, the majority's ex-post facto rulemaking on this point affects an end run around the longstanding principle that military judges -- not appellate courts -- are better placed to perceive and respond to the exigencies of trial. See, e.g., United States v. Ovando-Moran, 48 M.J. 300, 304 (C.A.A.F. 1998) ("The military judge was in the best position to evaluate [the member's] responses [during voir dire] and determine whether he was capable of following the judge's instructions."). Here, Appellee faced very serious charges of rape, sodomy, adultery,

7

and obstruction of justice ("sexual misconduct" in the view of the majority) in connection with three young female recruits who were less than half his age.  That the military judge was concerned that prejudice would result from Appellee's decision not to testify is clear on the record.  The military judge's hesitancy about not giving the instruction (he recessed twice before ruling) was palpable, and evinces a thoughtful decision. I am not prepared to substitute my judgment for that of the trial judge.

Apart from lacking a legitimate basis in the rule, the majority's requirement for "case specific interests of justice" draws an untenable distinction between what I understand to be "generalized" interests of justice (i.e., interests rooted in the "standard" fear "that the members would hold the appellant's silence against him,") and specialized or "unusual" interests of justice (presumably rooted in some other brand of fear).  The majority regards interests of the second sort as more legitimate and more deserving of a fail-to-testify instruction.  United States v. Forbes, 61 M.J. __ (11).  This distinction, however, fails to perceive what I think the military judge perceived: that the circumstances of Appellee's trial required an effective defense strategy or, that failing, the protective vigilance of a trial judge.  I assume the trial judge was aware that this Court has not been reluctant to impose a duty on military judges to

8

ensure the protection of individual rights.  United States v. Collins, 60 M.J. 261 (C.A.A.F. 2004) (when the only member to a sanity board convened under R.C.M. 706 appears to change his mind, the military judge abuses his discretion in not ordering any further inquiry into the accused's mental responsibility); United States v. Grigoruk, 52 M.J. 312 (C.A.A.F. 2000) (Obligation placed on trial judge.  When the defense fails to call Dr. Underwager, an approved defense expert, the military judge must make an inquiry on the record or an inquiry must be ordered through a hearing under United States v. Dubay, 17 C.M.A. 147, 37 C.M.R. 411 (1967)); United States v. Clark, 49 M.J. 98 (C.A.A.F. 1998) (holding that there was error by the defense in failing to call reconstruction expert who had previously been hired by the defense).

### Harmless Nonconstitutional Error

Assuming, arguendo, that giving the cautionary instruction was somehow error, this case, in any event, would present only "a violation of a Manual provision promulgated by the President to ensure a military accused a fair trial." United States v. Rush, 54 M.J. 313, 315 (C.A.A.F. 2001) (employing Article 59(a) after failing to find constitutional error).  Thus, Appellee can succeed only by demonstrating that the error substantially influenced the findings, or if this Court is otherwise "left in grave doubt" as to his convictions.  See, e.g., United States v.

9

United States v. Forbes, No. 04-5005/NA

Armstrong, 53 M.J. 76, 81 (C.A.A.F. 2000) (citing Kotteakos v.

United States, 328 U.S. 750 (1946); United States v. Adams, 44

M.J. 251, 252 (C.A.A.F. 1996)).[2]

    Article 59(a) applies to all nonconstitutional errors,

notwithstanding the majority's exemption by fiat for "defense-

friendly" rules.  61 M.J. __ (13).  Regardless of whether the

CCA's new test for prejudice is "well-reasoned," it has no basis

in the MCM, and the majority errs in adopting it today.

Employing the appropriate test for prejudice, the record in this

case satisfies me that the conviction below may stand.[3]

    Particularly detrimental to Appellee's allegations of

prejudice are the members' prior exposure in voir dire to the

instruction later complained of, and the strength of the

Government's case.  Against the backdrop of the comprehensive

reasonable doubt instructions given at the end of the trial,

---

[2] See also Rivera, 805 N.E.2d at 953 ("If the instruction is
given over defendant's objection, a liberal harmless error rule
would still seem warranted.") (citing Green, The Failure to
Testify Instruction, 14 Willamette L. J. 43, 52 (1977)).

[3] The CCA went outside Article 59(a) to find prejudice below.
After determining M.R.E. 301(g) to be "a defense-friendly rule,"
the CCA presumed prejudice to the defendant, and required the
Government to prove otherwise by a preponderance of the
evidence.  Forbes 59 M.J. at 941.  The Navy-Marine Court's self-
described "new test for prejudice," of which the CCA
acknowledges the Government "was not aware," represents a
departure from our standard analysis under Article 59(a), and is
itself error.  Id.

10

Appellee has not established any material prejudice to his substantial rights.

Voir Dire Instruction

The cautionary instruction, as given at the end of trial, was not novel to the members' ears, but mirrored a prior instruction given to them during voir dire.[4]  The instruction complained of reads as follows:

> The accused has an absolute right to remain silent. You will not draw any inference adverse to the accused by the fact that he did not testify as a witness.  The fact that the accused has not testified must be disregarded by you.

During voir dire, and without objection from the defense, the military judge had earlier alerted the members:

> You may expect or desire the accused to testify. The accused has an absolute right not to testify.  The fact that an accused may elect not to testify in his own behalf may not be considered adverse to the accused in any way. . . . Is there any court member who cannot follow this instruction?

The military judge recorded a negative response from all members.  Thus, where the members indicated they could follow the law as given to them by the military judge, I find no reason to conclude otherwise.  See United States v. Thompkins, 58 M.J. 43, 47 (C.A.A.F. 2003) ("absent evidence to the contrary, court members are presumed to comply with the military judge's

---

[4]  Voir dire occurred on August 17, 1998.  The instructions were read to the members on August 22, 1989.

United States v. Forbes, No. 04-5005/NA

instructions."); Lakeside, 435 U.S. at 340 n.10-11

(characterizing as "dubious," "doubtful," and "speculative" the

suggestion that a jury would disregard such an inference

instruction); United States v. Youngblood, 47 M.J. 338 (C.A.A.F.

1997) (military panels are often called "blue ribbon" panels due

to the quality of the members).  The risk that second

instruction prejudicially "emphasized" Appellee's silence is

therefore inconsequential.[5]

The Strength of Government's Case

The final indicium of harmlessness in this case is the

strength of the evidence against Appellee.  Four complaining

witnesses -- each about half Appellee's age -- testified against

him.  Two witnesses providing strikingly similar testimony about

Appellant's modus operandi of driving to remote areas with

female Navy recruits before assaulting them.[6]  The defense case

was weak by comparison:  Appellant's strategy at trial was

limited to impeaching the credibility of the alleged victims,

whose testimony otherwise went unchallenged.  In light of the

imbalance on the merits, any error by the military judge was

---

[5] See Ovando-Moran, 48 M.J. at 302-04.  There, a member indicated during voir dire that he would regard the accused's silence at trial to be "unnatural."  When, in response to further questioning, the member responded that he would not draw any adverse inference from the accused's silence, the military judge denied a defense challenge for cause.  This Court affirmed.

[6] See Testimony of CF (R. 519-26); Testimony of JB (R. 738-60).

unlikely to have substantially influenced the findings, and was therefore harmless under Article 59(a).

## Conclusion

While I agree with Judge Learned Hand that when an accused asserts his privilege against self-incrimination, it may sometimes be "better . . . for the trial judge to say nothing about it," I likewise agree with Judge Hand that, "to say that when he does, it is error, carries the doctrine of self-incrimination to an absurdity."  435 U.S. at 341 n.12 (quoting Becher v. United States, 5 F.2d 45, 49 (2d Cir. 1924)).  For these reasons, I respectfully dissent.