CRAWFORD, Judge
(dissenting):
Lack of mental responsibility can be a valid defense in only one situation, when:
at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts.
R.C.M. 916(k)(l).
If Appellant appreciated the “nature and quality or the wrongfulness” of his actions, he does not qualify for this defense. During his providence inquiry, Appellant explained several times that he understood that he had insufficient funds when he stole the truck and wrote the bad cheeks. His father’s testimony during the Article 39(a) session also suggested a motive: emulation of his relatively wealthy brother.
The accused is always presumed to have been mentally responsible and bears the burden of proving, “by clear and convincing evidence, that he or she was not mentally responsible at the time of the alleged offense.”[1] R.C.M. 916(k)(3)(A). Even if an accused can prove that he lacked mental responsibility over a long period of time that included the day of the offense, the prosecution can rebut this by proving that the accused was mentally responsible at a specific time dining that period — for example, while signing checks. United States v. Martin, 56 M.J. 97 (C.A.A.F.2001).
The providency hearing made clear the intent behind Appellant’s offense involving the truck:
ACC: Your Honor, I was counting on the deal not going through. I thought that the vehicle was too much and that the loan wouldn’t get approved. I believed I was going to have to turn it back in at the end of the week.
MJ: All right. You said you planned for the deal not to go through____[and] you wrote them some checks that you knew weren’t going to go through?
ACC: Yes, Your Honor ...
MJ: [Ylou knew at that point that you didn’t have the money in the bank, so you were defrauding them. Is that right?
ACC: Yes, Your Honor ...
MJ: And as a result, you were taking [the truck] for your own personal use, you said to show off?
ACC: Correct, Your Honor.
After Appellant changed his plea on the desertion charge to not guilty, the military judge returned to the issue of intent during discussion of the uttering specifications. When the judge asked him why he believed himself guilty of Specification 1, Appellant replied:
When I made the check I knew that I, the maker thereof, did not or would not have sufficient funds in the bank for the payment of the check in full____
MJ: You made this check for $1,090.39. Did you know at the time you didn’t have that money in the bank?
ACC: Yes, Your Honor____
MJ: You read off the intent to defraud, and I defined that earlier for you. Basically, obtaining items through misrepresentation and intending to use those items for the use and benefit of yourself or the use and benefit of someone else. Is that what you did when you presented this check?
ACC: Yes, Your Honor.
*400 Appellant’s accounts of the remaining specifications were similar. He admitted that the making of all three of the bad checks in the additional charge was “wrongful, unlawful, and with intent to defraud.”
Appellant’s father, John Cochran Harris, disclosed a possible motive during his testimony for the defense. After recounting Appellant’s history of problems with depression, low self-esteem, and lack of discipline, Mr. Harris went on to describe Appellant’s relationship with his older brother:
A: His brother has been very successful. He was an average student in high school. But then upon graduating from high school he went to ITT Technical Institute and ... built his way up into some respectable earning positions with some companies. Even to the point where he was earning enough that he purchased a small private plane to learn how to fly____ So, that was very impressionable [sic] I know to John the fact that his brother was earning good money, and had a plane, and had a family, and was moving ahead. Even to the point now that my oldest son did get his private license; and has now sold that plane; and has gone back to college full time at Indiana State University and enrolled in the professional pilot program----
Q: Do you think that Airman Harris looks up to his older brother?
A: Completely____ And there’s one thing about Chris, my oldest son, was material things. He liked ... nice things; a good car; but he was making the money that he could handle those things. I know John was kind of caught up into that materialistic image that his brother kind of projected and wanted to be like him in that respect.
Q: And do you think that was part of the reason why he did the things that he did in this case?
A: I really think it is.
The testimony of Appellant and his father does not suggest a man who was “unable to appreciate the nature and quality or the wrongfulness of his ... acts,” as required for a valid defense under R.C.M. 916(k)(l). Instead, it suggests a man who was mentally ill but nevertheless had a motive, a plan, and the ability to commit several crimes. Despite any mental illness, Appellant was lucid enough to form the necessary criminal intent. Thus, the defense of lack of mental responsibility is unavailable to him.
If lack of mental responsibility is a heavy burden for an appellant, a petition for a new trial is even heavier. This Court generally disfavors such petitions and will grant one “only if a manifest injustice would result absent a new trial ... based on proffered newly discovered evidence.” United States v. Williams, 37 M.J. 352, 356 (C.M.A.1993).
The standard for these petitions is laid out in R.C.M. 1210(f), which permits only two grounds for new trials: newly discovered evidence and fraud on the court-martial. Appellant petitions on the basis of newly discovered evidence, which requires him to show all of the following:
(A) The evidence was discovered after the trial;
(B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
(C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.
R.C.M. 1210(f)(2).
This Court tends to frown on post-trial second opinions by mental-health experts; it is reluctant to grant an appellant a new trial solely because his search for additional experts has yielded more favorable results. In United States v. Gray, 51 M.J. 1, 14 (C.A.A.F.1999), this Court held that “the establishment of conflicting expert opinion on an accused’s mental state does not necessarily require a rehearing.” The Gray Court found a rehearing to be particularly unwarranted where evidence of the illness existed before trial and there was a dispute as to the effect of that illness on the defendant at the time of the offense(s). Id.
This case illustrates the problem with post-trial second opinions. After his provideney *401 hearing, in which he had admitted his intent to steal the truck and pass the bad checks, Appellant sought the help of a psychiatrist. That doctor, Lieutenant Camille LaCroix, examined him and concluded that he suffered from Bipolar Disorder Type I. In contrast to the deliberate action he had described in his provideney hearing, she later testified that:
[h]e said he had no intention of buying a truck; he has no idea why that happened. He knows it did happen because he did do that and he had written these checks and everything else, but he had no preconceived notion of going to do these things.
She added, in response to defense counsel’s question, that the fact that Defendant had spent several days at the car dealership before stealing the car was irrelevant; that period could have been merely a build-up to the irresistible impulse that is characteristic of this disorder. She also noted that people with bipolar disorder cannot appreciate the wrongfulness of their actions at the time of an offense. Her conclusion thus became key to Appellant’s defense, even though it contradicted his own testimony.
Even if we ignore our policy against expert-shopping, Appellant’s case fails on another point: He would have discovered his evidence before trial, had he exercised due diligence. Appellant himself had straggled with mental illness as a teenager and had received medication and extensive counseling. He easily could have discovered his family history of mental illness, including his mother’s history of bipolar disorder. Due diligence by the defense also would have brought to light the evidence from Senior Master Sergeant Marilyn Toland and Captain William Cannon, who witnessed his peculiar behavior during pretrial confinement. Appellant did not discover any of this available evidence before trial. He thus is disqualified from consideration for a new trial on the basis of R.C.M. 1210(f)(2)(B) and our own precedent. Gray, 51 M.J. at 14.
I have no doubt that bipolar disorder has thrown Appellant’s life into repeated turmoil, and I underestimate neither his struggle nor the pain it has brought his family. However, we are asked to judge his actions against the fixed standards set by Congress. Appellant was able to appreciate the wrongfulness of his acts at the time he committed them. Therefore, the lack of mental responsibility cannot be a valid defense for him. Moreover, he failed to exercise due diligence in pretrial discovery. Therefore, his petition for a new trial fails to meet the statutory requirements. Accordingly, I respectfully dissent.

. "Clear and convincing evidence is that weight of proof which produces in the mind of the factfinder a firm belief or conviction that the allegations in question are true.” United States v. Martin, 56 M.J. 97, 103 (C.A.A.F.2001) (internal quotation marks and citations omitted), quoted in United States v. Collins, 60 M.J. 261, 265 (C.A.A.F.2004).